IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

NORMA J. SANCHEZ,

      Plaintiff,

vs.                                       No.  99cv0975 JC/JHG

KENNETH S. APFEL,
COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION

This matter is before the Court on Plaintiff's (Sanchez') Motion to Reverse or Remand Administrative Decision, filed August 14, 2000.  The Commissioner of Social Security issued a final decision denying Sanchez' application for a disability insurance benefits and supplemental security income.  The United States Magistrate Judge, having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, finds the motion to remand is well taken and recommends that it be GRANTED.

Sanchez, now  thirty-one years old, filed her application for disability insurance benefits and supplemental security income on August 15, 1996, alleging disability since July 31, 1996, due to hearing loss, dizziness and headaches.  On December 16, 1997, the Commissioner's Administrative Law Judge (ALJ) denied benefits, finding Sanchez did not have any disorder or combination of disorders meeting or equaling in severity any of the disorders described in the Listing of Impairments, Subpart P, Appendix 1.  The ALJ specifically found Sanchez had a "severe" impairment consisting of a hearing loss of her left ear secondary to trauma, but the

hearing loss was not severe enough to be deemed presumptively disabled.  Tr. 19, 20.  The ALJ

further found Sanchez retained the residual functional capacity(RFC) "for at least a full range of

sedentary[1] and light work[2] on a sustained basis."  Tr. 25.  As to her credibility, the ALJ found

Sanchez' testimony was credible only to the extent that it was supported by acceptable medical

documentation.  *Id.*   Sanchez filed a Request for Review of the decision by the Appeals Council.

On July 14, 1999, the Appeals Council denied Sanchez' request for review of the ALJ's decision.

Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review

purposes.  Sanchez seeks judicial review of the Commissioner's final decision pursuant to 42

U.S.C. § 405(g).

The standard of review in this Social Security appeal is whether the Commissioner's final

decision is supported by substantial evidence and whether he applied correct legal standards.

*Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992).

Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395

---

[1] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out jobs duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.  20 C.F.R. § 404.1567(a).

[2] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, a claimant must have the ability to do substantially all of these activities.  20 C.F.R. § 404.1567(b).

(10th Cir. 1994). "Evidence is not substantial if it is overwhelmed by other evidence in the record

or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

In order to qualify for disability insurance benefits or supplemental security income, a

claimant must establish a severe physical or mental impairment expected to result in death or last

for a continuous period of twelve months which prevents the claimant from engaging in

substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing

42 U.S.C. §423(d)(1)(A)). The regulations of the Social Security Administration require the

Commissioner to evaluate five factors in a specific sequence in analyzing disability applications.

20 C.F.R. § 404.1520 (a-f). The sequential evaluation process ends if, at any step, the

Commissioner finds the claimant is not disabled. *Thompson v. Sullivan*, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show she is

not engaged in substantial gainful employment, she has an impairment or combination of

impairments severe enough to limit her ability to do basic work activities, and her impairment

meets or equals one of the presumptively disabling impairments listed in the regulations under 20

C.F.R. Part 404, Subpt. P, App. 1, or she is unable to perform work she had done in the past. 20

C.F.R. §§ 404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to

the Commissioner to show the claimant is able to perform other substantial gainful activity

considering her residual functional capacity, age, education, and prior work experience. *Id.*

In support of her motion to reverse or remand, Sanchez makes the following arguments:

(1) the ALJ erred in his finding that Sanchez' mental impairment was not severe; (2) the ALJ

failed to adequately consider Sanchez' nonexertional impairments; and (3) the ALJ failed to give

substantial weight to the treating physician's opinion.

Sanchez contends the ALJ's finding that her depression was not a severe impairment under step two of the sequential evaluation process is contrary to law. While Sanchez bears the burden of proving her disability, at step two her burden is "de minimis." At step-two, a claimant is required only to make a "de minimis showing" that her medically determinable impairments, in combination, are severe enough to significantly limit her ability to perform work-related activity. *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988). To determine whether the claimant's impairments are sufficiently severe, the Commissioner must "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." 20 CFR § 404.1523. At this stage, the ALJ may not dismiss any of a claimant's impairments as nonsevere and disregard them thereafter. See SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996). Instead, the statutes and regulations make it clear that if the claimant's combined impact of the impairments are medically severe, the Commissioner must consider "the combined impact of the impairments throughout the disability determination process." 20 CFR § 404.1523.

A claim may be denied at step two only if an impairment, or combination of impairments, produces no more than a minimal effect on the claimant's physical and/or mental ability to do basic work activities. SSR 85-28, 1985 WL 56856 (1985). Social Security Ruling 85-28 states in pertinent part:

> Inherent in a finding of a medically no severe impairment or combination of impairments is the conclusion that the individual's ability to engage in SGA is not seriously affected. Before this conclusion can be reached, however, an evaluation of the effects of the impairment(s) on the person's ability to do basic work activities must be made. A determination that an impairment(s) is not severe requires a careful evaluation of the medical findings which describe the impairment(s) and an informed judgment about it (their) limiting effects on the

4

individual's physical and mental ability(ies) to perform basic work activities; thus, an assessment of function is inherent in the medical evaluation process itself. At the second step of sequential evaluation, then, medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities. If this assessment shows the individual to have the physical and mental ability(ies) necessary to perform such activities, **no evaluation of past work (or of age, education, work experience) is needed.** Rather it is reasonable to conclude, based on the minimal impact of the impairment(s), that the individual is capable of engaging in SGA.

By definition, basic work activities are the abilities and aptitudes necessary to do most jobs. In the absence of contrary evidence, it is reasonable to conclude that an individual whose impairments do not preclude the performance of basic work activities is , therefore, able to perform his or her past relevant work. If the medical establishes only a slight abnormality(ies) which has no more than a minimal effect on a claimant's ability to do basic work activities, **but evidence shows that the person cannot perform his or her past relevant work because of the unique feature of that work, a denial at the "not severe" step of the sequential evaluation process is inappropriate.** The inability to perform past relevant work in such instances warrants further evaluation of the individual's ability to do other work considering age, education and work experience.

SSR 85-28, 1985 WL 56856, at *4 (emphasis added).

At step two of the sequential evaluation process, the ALJ found Sanchez had a severe impairment of a hearing loss of her left ear secondary to trauma. Tr. 19. However, the ALJ found "claimant has not had a medically documented 'severe' mental and/or psychological disorder . . . ." Tr. 21. The ALJ found that Sanchez' "allegations of depression and anxiety as well as her borderline intellectual functioning had not caused any significant functional restrictions for any consecutive 12-month period at issue herein." Tr. 21. Additionally, the ALJ found that Sanchez' "headaches have responded to treatment . . . . I further find that her headaches have not had more than a minimal effect on [her] ability to perform physical and mental work functions for any consecutive 12-month period at issue. . . ." Tr. 22. Finally, the ALJ found Sanchez'

complaints of dizziness, lightheadedness, fainting spells, and blackouts had not been substantiated by objective evidence. *Id.* These findings are not supported by substantial evidence.

The evidence indicates Sanchez was involved in a motor vehicle accident on December 3, 1995 and suffered a basilar skull fracture with vesticular nerve damage. Tr. 136. Sanchez experienced "significant dizziness" and needed assistance to stand up three days after the accident. Tr. 136. Therefore, there is a strong possibility that the skull fracture would account for some residual dizziness and lightheadedness. Additionally, prior to the motor vehicle accident, Sanchez was employed at Little Caesar's Pizza for four years. Sanchez testified she was promoted to assistant manger "right away" and served as the manger for the last two years. Tr. 41. Sanchez testified she worked sixty hours a week and was responsible for inventory, payroll, scheduling, hiring, firing and training. *Id.* After the accident, Sanchez testified at the administrative hearing: "Afterwards it was just too hard for me. It was just too much for me. I couldn't handle it. Because it's all to do with numbers. And I failed an equivalency with math just recently. And before I was– I could do all the numbers." Tr. 43, 44. Dr. Eissele also found "Ms. Sanchez is functioning overall in the borderline range intellectually. It would seem that a fast food managerial position would require a somewhat higher level of functioning." Tr. 146. Therefore, the ALJ's finding that Sanchez' borderline intellectual functioning had not caused any significant functional restrictions is not supported by substantial evidence.

In addition, the record indicates Sanchez' depression had more than a minimal affect on her ability to work. Tr. 175, 178, 184, 188, 214, 215, 216. Dr. Eissele also noted Sanchez "showed some 'relative difficulty with attention/concentration.'" Tr. 146. Dr. Chiang's mental RFC also indicated Sanchez' diagnoses as (1) Adjustment Disorder with Mixed Emotional

Features and (2)Borderline Intellectual Functioning.  Tr. 207.  Finally, because the ALJ also found Sanchez could not perform her past relevant work, the ALJ erred in finding Sanchez was not disabled at step two of the sequential evaluation process.

Although the ALJ found Sanchez' mental impairments, depression and borderline intellectual functioning were not severe at step two of the sequential evaluation process, the ALJ further evaluated Sanchez' ability to do other work considering her age, education and work experience.  The ALJ also ordered (1) a consultative physical examination performed by Dr. Sun on November 6, 1996; (2) a consultative psychological examination performed by Dr. Susan G. Eissele on May 9, 1997; and (3) a vision evaluation by Dr. Richard Sonntag done December 6, 1996.  In addition, Dr. Chiang, a non-examining psychiatrist, completed the Psychiatric Review Technique Form (PRT) and the Mental Residual Capacity Assessment.  The ALJ also completed and attached the OHA PRT form to his December 16, 1997 Decision.  However, on remand, the ALJ should include Sanchez' mental impairments in the residual functional capacity assessment, the fifth step in the sequential process.  *See* 20 C.F.R. 1520a(c)(3); *Hargis v. Sullivan*, 945 F.2d 1482, 1488 (10th Cir. 1991)(once a mental impairment is considered to be severe, it must be included in the RFC assessment).

Additionally, the ALJ's reliance on the Medical-Vocational Guidelines (grids) to find Sanchez was not disabled was error.  20 C.F.R. § Pt. 404, Subpt. P, App. 2, Table Nos. 1 and 2, Rule 201.25, 201.26, 202.18 and 202.19.   As a general rule the grids should not be applied conclusively "unless the claimant could perform the full range of work required of [the pertinent RFC] category on a daily basis and unless the claimant possesses the physical capabilities to perform most of the jobs in that range."  *Ragland v. Shalala*, 992 F.2d 1056, 1057 (10th Cir.

1993).  "Moreover, resort to the grids is particularly inappropriate when evaluating nonexertional limitations such as pain and mental impairments."  *Hargis v.* Sullivan, 945 F.2d 1482, 1490 (10th Cir. 1991).  The grids may, however, be used to direct a conclusion if the claimant's nonexertional impairments do not significantly reduce the underlying job base.  *See Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995)(holding that the ability to perform a "substantial majority" of work in RFC assessment suffices for purposes of the grids).  This is because only significant nonexertional impairments limit the claimant's ability to do the full range of work with a classification.  *See Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993).

    Based on the record as a whole, the Court finds that the ALJ erred when he relied on the grids to meet his burden at step five of the sequential evaluation process.  The Court will remand this case for the limited purpose of having the ALJ call a vocational expert and to include Sanchez' mental impairments in his RFC assessment.

    Sanchez also complains the ALJ erred when he failed to accord significant weight to Dr. Vega's assessment.  In his Decision, the ALJ found "Dr. Vega is not considered to be a 'treating physician' as of May 12, 1997, when she wrote a letter stating that the claimant was 'currently unable to work because of her significant headaches and cognitive deficits . . . .'"  Tr. 23.  The ALJ came to this conclusion because there were no medical reports from Dr. Vega after April 14, 1997 and because Dr. Vega did not conduct any diagnostic tests.  *Id.*

    A treating physician may offer an opinion about a claimant's condition and about the nature and severity of any impairments.  *Castellano v. Secretary of Health and Human Servs.*, 26 F.3d 1027, 1029(10th Cir. 1994).  However, to be given controlling weight, the opinion must be "well supported by clinical and laboratory diagnostic techniques and [cannot be] inconsistent with

8

other substantial evidence in the record." *Id.* A treating physician's opinion that his patient is disabled is not dispositive, as final responsibility for determining disability rests with the Commissioner. *Id.* If the opinion of the claimant's physician is to be disregarded, specific legitimate reasons for this action must be set forth. *Byron v. Heckler*, 742 F.2d 1232 (10th Cir. 1984). Accordingly, although Dr. Vega is a treating physician, the ALJ articulated legitimate reasons for according little weight to her medical opinion.

## RECOMMENDED DISPOSITION

The ALJ did not apply correct legal standards and his decision is not supported by substantial evidence. Sanchez' Motion to Reverse or Remand Administrative decision, filed August 14, 2000, should be granted. This case should be remanded to the Commissioner to allow the ALJ to call a vocational expert and to include Sanchez' mental impairments in his RFC assessment.




_____
**JOE H. GALVAN**
**UNITED STATES MAGISTRATE JUDGE**

## **NOTICE**

Within ten days after a party is served with a copy of these proposed findings and recommended disposition that party may, pursuant to 28 U.S.C. § 636 (b)(1), file written objections to such proposed findings and recommended disposition. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.

10